UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PRINCIPAL LIFE INSURANCE COMPANY,**

        **Plaintiff,**

    v.

**DENISE M. HOWARD-KEMBITZKY,** *et al.*,

        **Defendants.**

Civil Action 2:22-cv-3421
Magistrate Judge Chelsey M. Vascura

**OPINION AND ORDER**

Plaintiff, Principal Life Insurance Company, commenced this action in interpleader against Defendants, Denise Howard-Kembitzky and Mindy Darby, two potential beneficiaries of a life insurance plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), to determine to whom life insurance benefits should be paid. Defendant Denise Howard-Kembitzky subsequently filed a counterclaim against Principal Life for breach of fiduciary duty under ERISA. This matter, in which the non-defaulting parties have consented to the jurisdiction of the Magistrate Judge under 28 U.S.C. § 636(c), is before the Court on Principal Life's Motion to Dismiss Denise Howard-Kembitzky's Counterclaim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 45.) For the following reasons, Principal Life's Motion is **DENIED**.

    **I.**    **BACKGROUND**

Francis Joseph Kembitzky, III, was employed by Towne Properties Asset Management Company, Inc., and participated in Towne Properties' employee welfare benefit plan (the

"Plan"). The Plan is governed by ERISA and includes group life and long-term disability insurance benefits funded and administered by Plaintiff Principal Life Insurance Company. (Countercl. ¶¶ 36–38, 42, ECF No. 42.) The Plan provides that, upon a participant's death, life insurance benefits will be paid to the participant's beneficiary, or, if no beneficiary was designated, benefits will be paid first to the participant's surviving spouse. (*See* Policy Part IV – Benefits, Section A, Articles 2, 4(d), ECF No. 1-1.) After divorcing from his previous wife, Defendant Mindy Darby, Francis married Defendant Denise Howard-Kembitzky in 2018. (Countercl. at ¶ 41.) In 2020, Francis became disabled and applied for long-term disability benefits through the Plan. (*Id.* at ¶ 42.) Denise alleges upon information and belief that at the time he applied for disability benefits, Francis executed an updated beneficiary designation form revoking Mindy as primary beneficiary and/or naming Denise as primary beneficiary, and that Towne Properties and/or Principal Life accepted the form. (*Id.* at ¶ 44.) At an unspecified time prior to Francis's death, Francis and/or Denise, authorized by Francis's power of attorney, contacted Principal Life "to ask for an updated beneficiary form so that Denise would receive the life insurance proceeds under the plan upon Francis' death." (*Id.* at ¶ 47.) In response, "Principal Life instructed Francis and Denise, as Francis' Power of Attorney, that Francis did not need to complete any additional forms and the life insurance proceeds would be paid to Denise upon Francis' death under the terms of the Plan." (*Id.* at 48.) Principal Life did not inform Francis or Denise that Towne Properties may have beneficiary designation forms on file or that Principal Life did not have access to all relevant information when it advised Francis not to submit another beneficiary designation form. (*Id.* at ¶ 50.) In reliance on Principal Life's representations, Francis did not complete an updated beneficiary form. (*Id.* at ¶¶ 51–53.)

Francis died on August 4, 2021, and Denise submitted a claim to Principal Life for life insurance benefits. At that point, Denise learned that Towne Properties possessed an enrollment form dated June 4, 2015, that was purportedly signed by Francis and designated Mindy as his life insurance beneficiary. (*Id.* at ¶ 55.) No other beneficiary designation was located. After Principal Life contacted Mindy several times, she eventually made a claim for life insurance benefits. Due to Denise's and Mindy's competing claims, Principal Life did not pay life insurance proceeds to Denise and instead commenced a claim in interpleader to determine the correct beneficiary on September 14, 2022 (ECF No. 1).

After Mindy failed to answer the Complaint and default was entered against her (ECF No. 16), Principal Life and Denise reached an agreement for Principal Life to pay Denise the life insurance proceeds, conditioned on entry of an order by this Court discharging Principal Life from any further liability under the Plan. (*See* Stipulations, ECF Nos. 29, 31.) On May 1, 2023, this Court denied Principal Life's and Denise's motions to enter default judgment against Mindy or discharging Principal Life from further liability, finding that the facts deemed admitted by Mindy's default established that she was the appropriate beneficiary. (ECF No. 36.) Denise subsequently filed a Counterclaim on June 20, 2023, contending that Principal Life breached its fiduciary duties under ERISA when it incorrectly advised Francis or Denise that no updated beneficiary form would be necessary for Denise to receive Francis's life insurance proceeds. (ECF No. 42.) Principal Life filed the subject Motion to Dismiss Denise's Counterclaim on July 12, 2023. (ECF No. 45.)

## II. STANDARD OF REVIEW

Principal Life moves to dismiss Denise's Counterclaim under Rule 12(b)(6). Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the

Court must "accept non-conclusory allegations of fact in the complaint as true and determine if the plaintiff has stated a plausible clam for relief." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (cleaned up).

Principal Life's briefing is accompanied by exhibits that were not attached to Denise's Counterclaim or Principal Life's Complaint. To the extent those exhibits were "referred to in the pleadings and [are] integral to the claims," the Court may consider the exhibits without converting the Motion to dismiss under Rule 12(b)(6) to one for summary judgment under Rule 56. *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). Otherwise, the Court must either reject reliance on the exhibits or convert the motion to one for summary judgment. *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006).

### III. ANALYSIS

The sole count in Denise's Counterclaim is for breach of fiduciary duty under ERISA. To prevail, Denise's allegations must establish that (1) Principal Life acted in a fiduciary capacity in making misrepresentations to Francis or Denise, (2) those misrepresentations were material, and (3) Denise detrimentally relied on the misrepresentations. *See Deschamps v. Bridgestone Americas, Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 276–77 (6th Cir. 2016) (citing *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002)). Principal Life disputes that Denise has sufficiently pleaded the first and third elements.

4

**A.     Denise sufficiently alleges that Principal Life acted in a fiduciary capacity.**

ERISA defines a fiduciary in 29 U.S.C. § 1002(21)(A), which provides in pertinent part: "a person is a fiduciary with respect to a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan." Under this definition, Principal Life is undisputedly a fiduciary as to at least some aspects of the life insurance plan in question, as the Policy provides that "[Principal Life] has complete discretion to construe or interpret the provisions of this group insurance policy, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided." (Group Policy for Towne Properties Asset Management Company, Inc., Part II – Policy Administration, Section A, Article 10, ECF No. 1-1.) But Principal Life contends that it was not a fiduciary with respect to answering Plan participant inquiries as to current beneficiary designations, because that function is reserved to Towne Properties in the Policy. (*See id.* at Part IV – Benefits, Section A, Article 3) ("A beneficiary should be named at the time a Member applies or enrolls under this Group Policy. A Member may name or later change a named beneficiary by sending a Written request ***to the Policyholder***. A change will not be effective until recorded ***by the Policyholder***.") (emphasis added). The "Policyholder" is defined by the Policy as Towne Properties. (*Id.* at Title Page, PAGEID #13.) Moreover, Towne Properties' Policy Application limits Principal Life's liability in that "Principal Life shall not be required to look into any action taken by the named fiduciary or the employer and shall be fully protected in taking, permitting, or omitting any action on the basis of the employer's actions. Principal Life shall incur no liability or

5

responsibility for carrying out actions as directed by the named fiduciary or employer." (Policy Application 5, ECF No. 46-2.)[1]

However, "[i]n determining whether a corporation is a fiduciary, rather than looking to the formal title, we use a functional approach, looking to whether it acts in a fiduciary capacity with respect to the conduct at issue." *Deschamps*, 840 F.3d at 277 (citing *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006) ("This court employs a functional test to determine fiduciary status.")); *see also Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001) (noting "the need to examine the conduct at issue when determining whether an individual is an ERISA fiduciary"). In other words, Principal Life's fiduciary status will be determined by its actions, not by its rights and responsibilities as set forth in the Plan. As the *Deschamps* court explained,

> In *Varity Corp. v. Howe*, for instance, the Supreme Court looked to common law, including the law of trusts and agency, to ascertain what actions constitute plan administration so as to make one a fiduciary. 516 U.S. 489, 502–03, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). It concluded that the discretionary act of plan administration "includes the activities that are 'ordinary and natural means' of achieving the 'objective' of the plan," such as offering information about the meaning of the plan's terms or "[c]onveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation." *Id.* at 502–04, 116 S.Ct. 1065. Based on this definition, the employer acted in a fiduciary capacity when it falsely represented to its employees that their benefits would remain the same if they voluntarily transferred to a separately incorporated subsidiary, knowing that the subsidiary was in fact insolvent, which caused employees to lose their non-pension benefits. *Id.* at 494, 498–503, 116 S.Ct. 1065.

840 F.3d at 277. Accordingly, a corporation may "act[ ] in a fiduciary capacity when making misrepresentations to its employees about their benefit plan." *Id.* (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998)). The *Deschamps* court went on to conclude that the defendant acted in fiduciary capacity when it responded to a direct inquiry from a plan

---

[1] The Court may consider this document as part of the Plan, which is referenced in Denise's Counterclaim and central to her claims. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997); *Com. Money Ctr.*, 508 F.3d at 335–36.

participant with inaccurate information as to the plan participant's service date. *Id.* at 278. "This act was a discretionary one within the meaning of ERISA because it involved conveying information about the Plan's terms and the likely benefits that Deschamps would receive in the future, thus purportedly allowing him to make an informed choice about his continued participation in the Plan." *Id.* "Thus, Bridgestone acted as a fiduciary." *Id.*

The undersigned finds *Deschamps*' functional approach controlling as to Principal Life's fiduciary status. Even though the Plan may direct participants to Towne Properties to update their beneficiaries, Principal Life assumed a fiduciary duty through its conduct by voluntarily answering Denise's or Francis's questions regarding Francis's current beneficiary. Accordingly, the Court finds that Denise has plausibly alleged that Principal Life acted in a fiduciary capacity when answering questions about Francis's current beneficiary.[2]

**B.      Denise sufficiently alleges that she reasonably relied on Principal Life's misrepresentations.**

Denise alleges that she and Francis relied upon Principal Life's representations that no updated beneficiary form was necessary in order for Denise to receive Francis's life insurance proceeds, and that as a direct result of Principal Life's omissions, Francis did not submit an updated form designating Denise as his beneficiary. (Countercl. ¶¶ 51–53, ECF No. 42.)

Principal Life contends that Denise could not have reasonably relied on Principal Life's misrepresentations about Francis's current beneficiary because the written Plan documents provide that Towne Properties is responsible for collecting and maintaining beneficiary forms. In other words, Principal Life contends that no liability for providing inaccurate information is

---

[2] As the Court finds that Plaintiff has sufficiently alleged that Principal Life acted in a fiduciary capacity based on its conduct, the Court need not consider Plaintiff's additional allegations that fiduciary status was conferred by means of agency principles or other Plan language regarding beneficiaries for replaced insurance.

possible when Plan participants have been provided with accurate information in written Plan documents. Principal Life cites no case in which such a rule was applied to an ERISA breach of fiduciary duty claim. To the contrary, the United States Court of Appeals for the Sixth Circuit has consistently held that "[ERISA] fiduciaries must give complete and accurate information in response to participants' questions, and that providing materially misleading information, whether negligently or intentionally, or by statement or omission, breaches this duty." *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 988 (6th Cir. 2018) (cleaned up) (quoting *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999)).

*Krohn* is illustrative. Nancy Krohn, an employee covered under short- and long-term disability plans through her employer, was severely injured in a car accident, and Mrs. Krohn's husband inquired with the plan administrator as to her disability insurance coverage. *Krohn* at 545. The plan administrator told Mr. Krohn that Mrs. Krohn was eligible for short-term disability coverage, but that most people preferred to elect coverage under their automobile insurance policies. The plan administrator neglected to inform Mr. Krohn of Mrs. Krohn's long-term disability coverage or of the long-term disability policy's requirement that any claim be submitted within 30 days of Mrs. Krohn's injury. *Id.* at 545–46. When Mrs. Krohn applied for long-term disability benefits three years later when her automobile insurance coverage expired, the long-term disability claim was denied as untimely. *Id.* at 546. In evaluating Mrs. Krohn's claim for breach of fiduciary duty against the plan administrator, the Sixth Circuit concluded that the plan administrator breached its fiduciary duty by failing to provide complete and accurate information concerning the long-term disability plan in response to the Krohns' inquiries. *Id.* at 550. This was so even Mrs. Krohn had previously received plan documents outlining the plan's coverage and terms:

8

> Providing a summary plan description several years before the request for information does not excuse the hospital from its duty to respond fully and accurately to later inquiries regarding benefits. Indeed, it would have been preferable for Huron Memorial to refer the plaintiff to her summary plan description or employee handbook to find the answer to her questions, and to have given her an additional copy if she had lost her own, than to have undertaken to provide such information and to have done so in such a careless and incomplete manner.

*Id.* at 550. The Sixth Circuit therefore "reject[ed] Huron Memorial's argument that provision of a summary plan description discharged or fulfilled its obligation to provide complete material information upon plaintiff's inquiry." *Id.*

Just as in *Krohn*, Francis and Denise may have received a copy of Plan documents containing relevant information; and, just as in *Krohn*, Denise alleges that she and Francis were provided inaccurate or incomplete information by a Plan fiduciary and that they relied on that inaccurate or incomplete information. The undersigned therefore finds that Denise has sufficiently alleged that she reasonably and detrimentally relied on Principal Life's misrepresentations, notwithstanding any contrary information contained in Plan documents.[3]

## C. Principal Life's remaining arguments lack merit.

Principal Life also argues that Plaintiff has no claim for equitable estoppel because "a party cannot seek to estop the application of an unambiguous written provision of an ERISA plan." (Mem. in Supp. 13, ECF No. 46.) Although Principal Life is correct as to the general rule that "[p]rinciples of estoppel . . . cannot be applied to vary the terms of unambiguous plan documents," *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403–04 (6th Cir. 1998), the Court does not read Denise's claim for fiduciary duty to request variance from the terms of the Plan.

---

[3] Principal Life also asserts that Denise's allegations of reliance are inconsistent with her allegations that Francis designated Denise as his beneficiary as part of his disability benefits application in 2020. (Mem. in Supp. 12, ECF No. 46.) Principal Life does not explain why an inquiry as to the current state of Principal Life's records would be inconsistent with a prior beneficiary designation of Denise or anyone else, and the Court can discern no inconsistency.

The thrust of Denise's or Francis's inquiry to Principal Life was whether their plan administrator's records showed that Denise was entitled to Francis's life insurance proceeds; they were informed that they did. There are two factual scenarios that are consistent both with Principal Life's representations and the terms of the Plan: either (1) Principal Life already had notice of Francis designating Denise as his beneficiary, or (2) Principal Life's records demonstrated that Francis had never designated a beneficiary, such that Denise would receive benefits as Francis's surviving spouse in the absence of a designated beneficiary. (*See* Policy Part IV – Benefits, Section A, Articles 2, 4(d), ECF No. 1-1.) Holding Principal Life to its representation—that Principal Life's records indicated that Denise would receive Francis's life insurance proceeds—does not require variance from the written terms of the Plan.

Next, Principal Life asserts that Denise lacks statutory standing to bring a claim under § 1132(a)(3), because such claims can be brought only by "a participant, beneficiary or fiduciary." (Mem. in Supp. 14, ECF No. 46.) Denise is clearly not a Plan participant or fiduciary, but she asserts that she is the proper beneficiary of Francis's life insurance proceeds. A "beneficiary" under ERISA is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The Sixth Circuit has construed this definition to encompass an individual that "has a reasonable or colorable claim to benefits under an ERISA plan." *Crawford v. Roane*, 53 F.3d 750, 755 (6th Cir. 1995). The *Crawford* court specifically noted that someone who had wrongfully been deprived of participation in an ERISA plan by a fiduciary would have standing to bring a claim under ERISA as a participant, notwithstanding the individual's technical status as a non-participant due to the fiduciary's wrongdoing. *Id.* at 755–56. "Otherwise, a fiduciary could defeat an employee's standing to bring an ERISA action by duping him into giving up his

10

right to participate in the plan." *Id.* at 756 (quoting *Swinney v. General Motors Corp.,* 46 F.3d 512, 518 (6th Cir. 1995)). Denise's allegations, that she was wrongfully deprived of benefits due to the misrepresentations of the Plan administrator, are indistinguishable from a standing perspective. Further, as Denise points out, Principal Life deemed Denise's claim sufficiently colorable to initiate this interpleader action in the first place.

Further, Principal Life contends that Denise's prayer for any kind of monetary relief must be dismissed, as her claim for breach of fiduciary duty under § 1132(a)(3) allows only for the types of relief "that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." (Mem. in Supp. 16, ECF No. 46) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). But *Mertens* held only that compensatory damages were not available in a suit against a *non-fiduciary*. *See* 508 U.S. at 248. Subsequent decisions by the United States Supreme Court have acknowledged that a defendant's status as fiduciary "makes a critical difference." *CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011) (acknowledging that the equitable remedy of surcharge assessed against a fiduciary may be appropriate under § 1132(a)(3)); *see also Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 467 (6th Cir. 2022) (same); *Krohn*, 173 F.3d at 551 (concluding that "the defendant is liable for the lost benefits that the plaintiff has sustained" under § 1132(a)(3)). As Plaintiff has sufficiently alleged that Principal Life acted in its fiduciary capacity, dismissal of Denise's claims for monetary relief is not warranted.

Finally, Principal Life argues that Denise's claim for breach of fiduciary duty under § 1132(a)(3) is nothing more than a repackaged claim for benefits under § 1132(a)(1)(B) and must be dismissed on that basis. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) ("The Supreme Court clearly limited the applicability of § 1132(a)(3) to

beneficiaries who may not avail themselves of § 1132's other remedies."). But Plaintiff has not alleged a denial of benefits to which she is entitled, as would befit a claim under § 1132(a)(1)(B). Rather, as did the plaintiffs in *Krohn* and *Deschamps*, she alleges that Principal Life's misrepresentations prevented her from becoming entitled to benefits. Such claims are appropriately brought under § 1132(a)(3).

## IV. DISPOSITION

For the foregoing reasons, Principal Life's Motion to Dismiss Denise's Counterclaim (ECF No. 45) is **DENIED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE